CRETE MILLS, APPELLEE, V. SMITH BAKING COMPANY, APPELLANT.

286 N. W. 333

FILED JUNE 9, 1939.   No. 30625.

*William Niklaus,* for appellant.

*Perry, Van Pelt & Marti, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER, MESSMORE AND JOHNSEN, JJ., AND KROGER, DISTRICT JUDGE.

CARTER, J.

This action was commenced by plaintiff to recover $2,758.51 for flour delivered under written contracts between December 5, 1935, and January 30, 1936. Defendant in its answer and counter-claim contends that it is entitled to recover $1.38 on each of 3,120½ barrels of flour sold by plaintiff to defendant from May 2, 1934, to January 6, 1936. A jury was waived and a trial had to the court. Judgment was for the plaintiff for the full amount and defendant appeals.

The delivery and contract price of the flour are not disputed. The question to be determined is the right of the defendant to recover back $1.38 per barrel of the contract price of the flour.

The item of $1.38 per barrel of flour is claimed by the defendant to represent the amount paid by it to the plaintiff to cover a processing tax imposed upon the latter under the provisions of the Agricultural Adjustment Act, 7 U. S. C. A. sec. 601 *et seq.*, and which act was declared unconstitutional on January 6, 1936, by the supreme court of the United States. *United States v. Butler*, 297 U. S. 1, 56 S. Ct. 312. The plaintiff paid all processing taxes due the federal government under the foregoing act to and including May 31, 1935. On June 1, 1935, plaintiff enjoined the collection of the processing tax and impounded the funds subsequently derived from the tax. After the adjudication of unconstitutionality of the Agricultural Adjustment Act, the impounded money, less fees, costs and attorneys fees, was returned to the plaintiff. Congress thereupon passed the Windfall Tax Law, 26 U. S. C. A. sec. 345 *et seq.*, by which a tax of 80 *per centum* was levied on the money so impounded, less expense and tax adjustments made with the purchasers of flour. Such purchasers who received tax adjustments were subjected to the provisions of the Windfall

Tax Law on the amounts received by them. Plaintiff offered the defendant such a tax adjustment in the amount of $1 per barrel for the 882½ barrels of flour delivered during the period the processing tax was impounded, and it was refused. The plaintiff then paid the Windfall Tax to the federal government as provided by the Windfall Tax Act.

The evidence shows that the processing taxes were at no time billed separately from the composite price for the flour set forth in the contracts of purchase. It is stipulated by the parties that no money was paid to the plaintiff by defendant under any formal or written protest and that no demand for the return of the money paid or objections concerning processing taxes were made by defendant to plaintiff at any time during said period.

Defendant contends that the payments of the processing taxes to plaintiff were involuntary. That the payments were voluntarily made, in the light of recent decisions on the subject, is beyond question. In *Johnson v. Scott County Milling Co.*, 21 Fed. Supp. 847, the court said: "The court declares the law to be that, where one voluntarily pays money with full knowledge of all the facts, in the absence of fraud or duress, he cannot recover the same back although mistaken as to the law, and that the plaintiff, having voluntarily paid the purchase price of the flour purchased from the defendant, cannot recover the same back in this action."

In *Heckman & Co. v. Dawes & Son Co.*, 12 Fed (2d) 154, the court in a very similar case said:

"Taxes voluntarily paid cannot be recovered back, and payments with knowledge and without compulsion are voluntary. * * *

"The revenue act of 1918, as construed by the Treasury Department, imposed a tax on the manufacturer, not the dealer. The defendant, as such manufacturer, paid this tax. In selling to the plaintiff, it added to the selling price the amount of the tax, which plaintiff voluntarily paid in order to continue 'dealing in cider, which was a large and profitable portion of its business.' Defendant paid no tax for the plaintiff but for itself. The sale to the plaintiff

was not induced by misrepresentation as to law or fact, nor was it the result of undue influence on the one side and undue confidence on the other. The payment of this 10 per cent. by the plaintiff, therefore, was the result of nothing more than a mistake of law, and such a situation presents no ground for equitable relief." See, also, *Cohen v. Swift & Co.*, 95 Fed. (2d) 131; *Dorland v. City of Humboldt*, 129 Neb. 477, 262 N. W. 22.

It is established by the record that plaintiff has paid all the processing taxes due the federal government prior to May 31, 1935, and that it has paid the Windfall Tax due the federal government on the balance of the processing taxes collected. Under this state of facts defendant is not entitled to recover back any part of the tax paid to plaintiff. In *Johnson v. Scott County Milling Co.*, *supra,* the court said: "The court declares the law to be that the so-called 'Windfall Tax Act' was passed for the purpose of the government's recovering from the processors taxes not paid under the Agricultural Adjustment Act, and that the Congress of the United States having adopted a policy of the recovery of said unpaid processing taxes for the benefit of the government and having levied a tax for that purpose, and the defendant having made return under said revenue act and paid said tax, defendant is not liable to the plaintiff in this action."

In *Hodgman Rubber Co. v. Dumaine,* 93 Fed. (2d) 165, the court said: "Furthermore, inasmuch as the Amoskeag Company, the seller, has paid the tax to the United States and received nothing back, if it could be inferred from the contracts that the promise of the buyer was to pay the seller a stated price for the goods and also pay him an additional sum to pay the tax, the appellant could not, even then, maintain its claim for the amount of the tax, first, for the reason that the Amoskeag Company would have complied with its contract by paying the government the tax, and, second, because it could not be said to have unjustly enriched itself at the appellant's expense, for it paid the tax and has not been reimbursed through a refund of it."

The contention is advanced that defendant is entitled to

recover under the terms of the contracts of purchase of the flour. Each of the contracts contained the following: "Taxes: The price named in this contract includes all taxes as at the date hereof proclaimed by the secretary of agriculture by virtue of the authority vested in him by the Agricultural Adjustment Act of the United States. Under said act it is provided that said taxes may be changed from time to time. It is recognized by the parties hereto that there is a growing tendency on the part of the United States and the separate states to tax grain and grain products, containers and other items used in connection with the manufacturing, processing, blending, sale, or distribution thereof. It is, therefore, agreed and understood that if, after the date of this contract, the commodities and/or containers, or other items used in connection with the manufacturing, processing, blending, sale or distribution thereof, shall become subject to any increase in taxes or to any new or additional tax or taxes other than those included in the price hereof (if the seller shall be required by law to collect such increases or additional taxes), then, in that event, said increases or additional taxes shall be added to the price hereof; and correspondingly if any tax included in the price hereof shall be decreased or abated, then, in that event, said decrease or abatement shall be deducted from the price hereof."

This identical provision has been construed in the similar case of *Johnson v. Igleheart Bros.*, 95 Fed. (2d) 4, wherein it was determined that contracts for the sale of flour, providing that the price included taxes under the Agricultural Adjustment Act, that such taxes might be changed, that if the taxes were increased before delivery, the amount of increase should be added to the price, and, if reductions were made, the buyer would be allowed the amount of the reductions, and if any tax included in the price should be decreased or abated, the decrease or abatement should be deducted from the price, applied only to the contingencies provided in the act which authorized increases, decreases, abatement, and refunds, and had no application to con-

tingencies which resulted when the Agricultural Adjustment Act was declared unconstitutional.

In *Zinsmaster Baking Co. v. Commander Milling Co.*, 200 Minn. 128, 273 N. W. 673, the court said: "If it be true that the sale price was a composite price per barrel so that the tax was 'buried in the price' under all or any of the contracts involved, plaintiff cannot recover any part of such composite price."

In *Golding Bros. Co. v. Dumaine*, 93 Fed. (2d) 162, the court stated the rule as follows: "It seems to be well settled that, where a sales contract provides that the purchaser is to pay a stated price and that alone, the purchaser cannot recover from the seller the amount of the tax, if the tax is later done away with by a repeal of the statute or by its being declared unconstitutional, or, if the tax is simply reduced, recover the amount of the reduction, even though the tax had not been paid by the vendor, or, if paid, refunded to him."

Other cases holding to the same effect are *Wayne County Produce Co. v. Duffy-Mott Co.*, 244 N. Y. 351, 155 N. E. 669; *Lucas v. Panos*, 190 Wash. 402, 68 Pac. (2d) 617; *Planters Nut & Chocolate Co. v. Brown-Murray Co.*, 128 Pa. Super. Ct. 239, 193 Atl. 381.

The contention is advanced that there is an implied agreement to return a sum of money equal to the amount of the processing taxes paid after the Agricultural Adjustment Act was declared unconstitutional. The applicable rule is: "Where parties expressly contract under what circumstances an obligation may arise with reference to a certain subject-matter, and the contract is entered into without fraud or mutual mistake, it excludes the possibility of an implied covenant of a contradictory or different nature." *Johnson v. Igleheart Bros., supra.*

Defendant relies on *Cream of Wheat Corporation v. Moundridge Milling Co.*, 24 Fed. Supp. 998. This case seems to sustain the contentions of the defendant. It appears, however, to be based upon previous decisions of the supreme court of Kansas. There are so many decisions to the con-

trary interpreting the very provisions involved in the contract before us which appear to be supported by the better reasoning that we feel obliged to accept them and to disregard the *Cream of Wheat Corporation* case.     In so doing, we necessarily come to the conclusion that the trial court correctly entered judgment for the plaintiff for the full amount of its claim.

AFFIRMED.