**SUNCOOK MILLS v. UNITED STATES.**
Civil Action No. 493.

District Court, D. Massachusetts.
April 27, 1942.

Peabody, Brown, Rowley & Storey, of Boston, Mass., for plaintiff.

Edmund J. Brandon, U. S. Atty., and Gerald J. McCarthy, Asst. U. S. Atty., both of Boston, Mass., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Edward H. Horton, Sp. Assts. to Atty. Gen., for defendant.

FORD, District Judge.

This is an action in which the plaintiff seeks to recover $805.64, representing the

unpaid contract price for supplies furnished by the plaintiff to the Navy Department, which was applied by the Comptroller General of the United States in liquidation of an alleged indebtedness in that amount due the United States as an overpayment by it on other contracts with the plaintiff.

The facts here are not in dispute except in one particular which will be discussed later.

The plaintiff is a corporation duly organized and existing under the laws of Massachusetts, and having its principal place of business in Boston, where, during the year 1938 and many years prior thereto, it was engaged in the manufacture and sale of black Venetian cloth and airplane cloth.

On December 17, 1938, the plaintiff and defendant entered into a written contract, NOs–64217, by which plaintiff agreed to sell to the defendant, for the use of the Navy Department, 35,000 linear yards, more or less, of mercerized cotton airplane cloth at a unit price of $0.68087 per linear yard, less 20% discount for payment within thirty days. Under the terms of this contract the plaintiff became entitled to receive from the defendant the sum of $23,830.45.

Thereafter, on June 15, 1939, the plaintiff was advised by the General Accounting Office of the United States, by settlement certificate No. US–6155–N, that the sum of $805.64 of the plaintiff's claim on contract NOs–64217 had been applied by the defendant in liquidation of an indebtedness in that amount alleged to be due the defendant from the plaintiff and that the balance of $23,024.81 would be certified for payment. The defendant paid the plaintiff this latter sum.

The defendant's refusal to pay the plaintiff's full claim for payment on contract NOs–64217 is due to the defendant's contention that the plaintiff is indebted to it in that amount as a result of overpayments made to the plaintiff by the defendant under prior contracts, which alleged overpayments consisted of the amount of processing taxes included in the bid price of supplies sold by the plaintiff to the defendant.

On May 20, 1935, and July 22, 1935, respectively, the plaintiff and the defendant made and executed contracts NOs–42193 and 43339 whereby the plaintiff agreed to sell and deliver to the defendant at prices fixed by bids submitted by the plaintiff and accepted by the defendant and expressly made a part of the respective contracts, 44,000 yards of black Venetian cloth and approximately 15,000 yards of airplane cloth processed by the plaintiff in whole or in part from cotton. These contracts were fully performed by the plaintiff and the defendant paid in full the amount called for by the contracts.

Contracts NOs–42193 and NOs–43339 each contained the following so-called federal tax clause:

"Prices bid herein include any federal tax heretofore imposed by the Congress which is applicable to the material on this bid. Any sales tax, duties, imposts, revenues, excise or other taxes which may hereafter (the date set for the opening of this bid) be imposed by the Congress and made applicable to the material on this bid will be charged to the Government and entered on invoices as a separate item".

Pursuant to the provisions of the Agricultural Adjustment Act of May 12, 1933, 48 Stat. 31, as amended, 7 U.S.C.A. § 601 et seq., the rates of processing tax on the first domestic processing of cotton were established by the Secretary of Agriculture prior to the date set for opening of the bids for said contracts NOs–42193 and NOs–43339. The processing taxes imposed upon the black Venetian cloth (rate .0504 cents per pound) and airplane cloth (rate .05502 cents per pound) delivered under the contracts amount to the respective sums of $605.14 and $200.50.

The several prices contracted to be paid, and paid, by the defendant to the plaintiff under contracts NOs–42193 and NOs–43339 were unit prices for the supplies bought thereunder, and the defendant did not pay to the plaintiff separate funds, namely, a fund for the supplies and a fund for the tax, but did pay the single contract price for the supplies named in the respective contracts.

While the defendant paid to the plaintiff the full contract price named in the respective contracts NOs–42193 and NOs–43339 for the supplies furnished by the plaintiff to the defendant thereunder, the plaintiff, because it obtained an injunction against the collection of processing taxes under the Agricultural Adjustment Act of 1933, did not pay to the defendant the processing taxes, aggregating the sum of $605.14, imposed on account of contract NOs–42193 under the supposed authority of the Agricultural Adjustment Act of May, 1933.

The parties are in dispute as to whether the plaintiff paid the processing taxes, aggregating $200.50 on the processing of raw cotton used by it in making the cloth in filling contract NOs–43339. This tax became payable on the opening of a bale of raw cotton and it was agreed that on all cotton opened by it prior to April 1, 1935 it paid a tax.

It was testified by an officer of the plaintiff company that contracts for finished goods are performed by finishing Greige, or unfinished woven cloth in stock, and the records of the company showed that all but one of the bales of Greige goods used in filling this contract were packed from May 13 to May 31. Two of the bales were packed May 28 and May 31, respectively, and the remaining bale was packed June 4, 1935. The assistant treasurer of the company testified it took from eight to ten weeks from the time a bale of raw cotton was opened to the packing of a bale of Greige goods. The government offered no evidence to refute this testimony.

It was impossible to earmark the cotton as coming from a particular bale while the processing was going on, and the baling in woven form was the first point at which a particular mass of cotton could be earmarked.

■ The plaintiff asks the court to find from the evidence that at least some of the bales used in contract NOs–43339 were opened before April 1st and that on these it paid the tax. The difficulty is that the estimate of the time by the officer of the company is too general and too indefinite. It is only an average estimate. He did not, in his testimony, exclude the possibility that it would take less than eight weeks to finish the processing. There was no evidence of any sort as to when before April 1, 1935, a tax was actually paid. The evidence is "unsatisfactory in its generality". Sammons et al v. Colonial Press, Inc., et al., 1 Cir., February 20, 1942, 126 F.2d 341, 349. To enable the court to arrive at the conclusion asked for by the plaintiff there should be much more detailed evidence—probably by those directly engaged in the processing—as to the length of time each step took. In the absence of this testimony, the court would be compelled to rely, more or less, upon pure conjecture. The burden of proof with respect to this matter was on the plaintiff and I find it has failed in its attempt to show that the processing taxes were paid on any of the raw cotton used in contract NOs–43339.

In the light of these facts, we come to the question as to whether the United States is entitled to maintain its set-offs to a suit upon contract NOs–64217, asserted on the ground that the plaintiff was overpaid on contracts NOs–42193 and NOs–43339 and should return the amount of the overpayments.

I conclude that the plaintiff has avoided payment of the processing taxes on the contracts NOs–42193 and NOs–43339 and to that extent has received a benefit which in equity and good conscience should be returned to the defendant. The government handed over to the seller sufficient money in addition to its price, which included a profit, to pay the processing taxes involved.

. The situation in reality was as follows:

■ The plaintiff sold material to the government; it fixed a price for its goods inclusive of a profit; the government knew the plaintiff was compelled to pay a processing tax, the amount of which was known to both parties; the government, desiring that the plaintiff lose nothing because of this tax it expected to collect, figured the tax separately and included it in the total price to be paid; with this addition, the total price now included the cost to the plaintiff for the manufactured goods, a profit, and the processing tax which was later to be collected by the government. These taxes are later not paid by the seller.

■ The amount of the taxes here cannot be said to be absorbed in a composite price. United States v. American Packing & Provision Co., 10 Cir., 122 F.2d 445, 448. Here, as in the case of United States v. Kansas Flour Mills Corporation, 314 U.S. 212, 62 S.Ct. 232, 86 L.Ed. ——, decided December 8, 1941, the purpose of the government was to protect the seller's margin of profit over the amount of the tax. It was never the intention of the parties that the seller should get any benefit from the taxes which were undeniably added to the margin of profit. When the tax, which was specifically in the minds of the parties and included in the price bid, failed, the purpose for which the tax was collected failed, and the obligation of the United States should be reduced pro tanto. Wayne County Produce Co. v. Duffy-Mott Co., 244 N.Y. 351, 155 N.E. 669; Restatement, Restitution, Sec. 48,

Illustration No. 3. To allow the government to recover the amount of the tax would not constitute an unjust enrichment to it as the latter had no way to pass on the tax to anybody else. This was the view taken by the Circuit Court of Appeals for the Tenth Circuit in the case of United States v. American Packing & Provision Co., supra, certiorari denied December 15, 1941, 62 S.Ct. 364, 86 L.Ed. ——. Such a decision, involving a case where the tax clauses were similar to those involved here, is a very persuasive authority in this court and I believe that its reasoning, which need not be repeated at length, applies here. It is true that the decision rests in part on the view of the court that under Utah law it is sufficient to sustain a cause of action for money had and received to show that the defendant has obtained money under such circumstances that in equity and good conscience it should be returned to the plaintiff. But the law of Massachusetts—applicable here (Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487)—is also to this effect. Flye v. Hall, 224 Mass. 528, 113 N.E. 366; Dennett v. Perkins, 214 Mass. 449, 451, 101 N.E. 994; Knowles v. Sullivan, 182 Mass. 318, 65 N.E. 389; Commonwealth v. Haupt, 10 Allen, Mass., 38; Wiseman v. Lyman, 7 Mass. 286; Rule 8(e) (2), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c; and General Laws of Massachusetts (Ter.Ed.) c. 231, § 31. In Commonwealth v. Haupt, supra, 10 Allen, Mass., at page 45, the court stated: "That money paid or property delivered, *under a mutual mistake,* may be recovered back in a proper form of action, * * * is a principle of law so elementary and well settled that it hardly needs the citation of authorities". (Italics mine.)

I cannot agree with the plaintiff's contention that the reasoning of the American Packing & Provision Company case, supra, has been overruled by the decision of the Supreme Court of the United States in the case of United States v. Kansas Flour Mills Corporation, supra. It is true that the decision in that case was rested on the ground that under the tax clause of the contract there involved the government was entitled to its set-offs. But the court's failure to state an alternative ground of decision, i. e., unjust enrichment, in a case where there was an already adequate reason for its decision, may not be interpreted as a rejection of the alternative reasoning. It seems hardly probable that the court intended any such result. The American Packing & Provision Company case is referred to by the court in a footnote as one of a number of "pending cases involving the same question". In another footnote the grounds of the decision are stated, yet no criticism of them appears. Finally, it may be noted that one week after the decision of the Kansas Flour Mills case, certiorari was denied in the American Packing & Provision Company case. I cannot reconcile these circumstances as consistent with an intention to overrule the reasoning of that decision.

Judgment will be entered for the defendant with costs.