STANDARD RICE CO., Inc., v.
UNITED STATES.

No. 45584.

Court of Claims.

Feb. 7, 1944.

Milton K. Eckert, of Washington, D. C. (John C. White, of Washington, D. C., on the brief), for plaintiff.

Elizabeth B. Davis, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge, delivered the opinion of the court:

The plaintiff, whose business was milling rice, made, on November 13, 1935, a contract to sell a large quantity of milled rice to the Government, for the Navy. The contract contained the following paragraph: "Prices bid herein include any federal tax heretofore imposed by the Congress which is applicable to the material on this bid. Any sales tax, duties, imposts, revenues, excise or other taxes which may hereafter (the date set for the opening of this bid) be imposed by the Congress and made applicable to the material on this bid will be charged to the Government and entered on invoice as a separate item."

The plaintiff, as the first domestic processor, paid the processing taxes, imposed by the Agricultural Adjustment Act, 7 U.S. C.A. § 601 et seq., for the rice which it milled from April 1, 1935, to September 20, 1935. It obtained an injunction against the further collection of the taxes, and paid no tax for rice milled after September 1935. It milled the rice, which it delivered under its contract with the Government, after September, and paid no processing taxes on it. The taxes would have been, if paid, $8,479.60. In January 1936, the Supreme Court of the United States held the Agricultural Adjustment Act unconstitutional. United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914. The taxes were, therefore, never collected, as taxes.

For the years 1935 and 1938, the plaintiff overpaid its income taxes by some $28,000. The Government conceded the overpayment, but the Comptroller General, asserting that the plaintiff owed the Government $8,479.-60, the equivalent of what the processing taxes would have been on the rice contract, withheld that amount from the plaintiff's income tax refund. The plaintiff, denying its liability for the processing taxes or their equivalent, sues for the amount withheld.

As appears in finding 17, the plaintiff paid a large sum in 1939 as unjust enrichment taxes under Title III of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 944 et seq., apparently because it had collected from various purchasers processing taxes which it had not itself paid. Included in the transactions upon which these taxes were based were some units of the sales to the United States, as to which the Comptroller General held that the plaintiff owed the United States the amount of the unpaid processing taxes, which amount that official collected for the United States by the set-off complained of in this suit. The amount of the unjust enrichment taxes so collected which was attributable to the sales of rice to the United States, here in question, was $1,706.59. The plaintiff claims, in the alternative, that it should recover at least that amount, and the Government concedes the validity of that claim.

The Government justifies the Comptroller General's action in collecting from the plaintiff by set-off the entire amount which the plaintiff would have had to pay, as taxes, if the Supreme Court had not held the Agricultural Adjustment Act unconstitutional, on the ground that the Government and the plaintiff, when they made the contract for the milled rice, contemplated that the tax would be paid, and included the tax in the contract price. The Government's theory seems to be that this contemplation, in the circumstances, rose to the dignity of an implied term of the contract to the effect that if the taxes were not paid, the contract price would be correspondingly reduced. It relies on the case of United States v. Kansas Flour Mills Corporation, 314 U.S. 212, 62 S.Ct. 232, 234, 86 L.Ed. 159, where the Supreme Court held that, under a contract differing somewhat from the plaintiff's contract, the United States could recover the amount of the tax in a quasi-contract suit, under state law, to prevent unjust enrichment. In that case the contract provided that if any sales tax, processing tax or other taxes or charges "are imposed or changed by the Congress after the date set for the opening of the bid * * * and are paid to the Government by the contractor * * * then the prices named in this contract will be increased or decreased accordingly * * *."

The Government recognizes, of course, that the language of the contract involved in the Kansas Flour Mills Corporation case was much more pointed, since it had in it a direct "up and down" clause relating the contract price to the amount of the tax. If, in that case, Congress had reduced or repealed the tax, the Government would have been entitled, by the very letter of the contract, to get back a corresponding part of the price paid. Whatever difficulties the case presented were caused by the fact that the contractor there had been relieved from paying the tax, as a tax, not by a repeal by Congress, but by the tax statute becoming unenforceable because of the Supreme Court's decision in United States v. Butler, supra. The Supreme Court was at pains to point out, in the Kansas Flour Mills Corporation case, that Congress had, after the Butler decision, recognized, in legislation, the invalidity of the processing tax and had enacted the unjust enrichment tax, and that therefore there had been a change, by Congress, within the meaning of the contract there in question.

Because of the difference in the language of the two contracts, the Kansas Flour Mills Corporation case, supra, is not a direct precedent against the plaintiff in this case. However, the Government points out that the Supreme Court used the following language, and urges that the language is applicable to the plaintiff's contract. The court said: "In the case of private contracts, the vendees purchase for resale and the tax burden assumed is passed on to their customers. The fact that the processor, the vendor, is protected from the payment of the tax by injunction does not reduce the price to the vendee or to purchasers from him. The courts will not permit the unjust enrichment involved in recovery by the vendee of the amount of tax which he has passed on to his customers. In the contracts in question, the Government did not buy for resale. Unless it received the tax it suffered a definite disadvantage. Its purpose, as shown by the contracts, was to balance the tax element in the price paid with the tax collected. The Government, which could not pass on the tax on resale, was thus protected, not against a fall in the market price but against a loss in its tax revenues. In cases of private sales, the processor's injunction against collection of the tax, as held by the cases cited, worked no harm to his vendee. A similar injunction, in the case of Government contracts, would leave the price to the Government at the higher level reflecting the tax and deprive the Government of the reciprocal benefit flowing from collection of the tax."

We are persuaded that there is a vital difference between the plaintiff's contract and that in the Kansas Flour Mills Corporation case. In the Kansas case the processing tax was expressly mentioned, as the Supreme Court observes. In our case it is not mentioned by name, and there is no indication in the contract, or in any proved circumstance of the contract, that the parties had this tax in mind any more than they had tariff duties, for example, in mind. If Congress had reduced, or even repealed a tariff law applicable to rice, and if the plaintiff had thereupon imported rice and furnished it to the Government in fulfillment of its contract, we doubt whether the plaintiff would have been regarded as owing the amount of the tariff duty it would have had to pay, but for the repeal. Yet there would have been exactly as much reason for permitting the Government to sue for, or to offset the tariff duties of which the contractor was re-

lieved, in that case as in the case of the processing tax.

 We think that the language of the contract in the instant case does not express or imply an intention that the Government is to get, either as taxes or by offset or otherwise, the amount of any applicable federal tax which was in existence when the contract was made. We think the tax provision of the contract, which was drawn by the Government and whose ambiguities should therefore be resolved against the Government, may very well have been meant only to foreclose any argument as to whether federal taxes were payable upon federal purchases and the steps preparatory thereto. The statement that prices bid "include" specified things is customary in Government contracts, as to various named things which will, or may, have to be done to fulfill the contract. Presumably the bidder adds something to his bid to cover these things, whether they are certain or contingent. Yet it has never been thought that if he gets the things that he must accomplish done cheaper, or escapes by good luck the expense of doing some or all of the contingent things, he should refund to the Government what it would have cost him to do them if costs had remained what they were when the contract was made, or if all the things that might have increased his costs had happened. We think that, in general, the Government, as contractor, should be treated by the law as other contractors similarly circumstanced are treated.

The fact that the contract expressly provided that if new (or perhaps increased) federal taxes were levied on the materials, the Government would refund those taxes, seems to us to argue strongly that the reverse was not intended to be implied from the parties' silence.

We recognize that the Circuit Court of Appeals for the Tenth Circuit, in United States v. American Packing & Provision Co., 122 F.2d 445, treated contracts of the two types in the same way, and held with the Government as to both; and that the United States District Court for the District of Massachusetts, in Suncook Mills v. United States, 44 F.Supp. 744, held for the Government in a case involving a contract like the plaintiff's. We also recognize that the denial of certiorari by the Supreme Court in the American Packing case, supra, shortly after its decision in the Kansas Flour Mills Corporation case, supra, may indicate that the language of the court in the Kansas Flour Mills Corporation case was more broadly intended than we have supposed.

We conclude that the plaintiff is entitled to recover $8,479.60, with interest as provided by law.

It is so ordered.

WHITAKER and LITTLETON, Judges, concur.

JONES, Judge, and WHALEY, Chief Justice, took no part in the decision of this case.