PEDRO A. PIZÁ, INC., ETC., Petitioner, v. TAX COURT, Respondent; TREASURER OF PUERTO RICO, Intervener.

No. 243. Argued December 8, 1950.—Decided March 21, 1951.

---

[4] In order to make the liquidation, the lower court will permit the parties to amend the pleadings as may be pertinent.

*Córdova & González* and *Hernán R. Franco* for petitioner. *Víctor Gutiérrez Franqui, Attorney General (Vicente Géigel Polanco, former Attorney General on the brief)* and *Elmer Toro Lucchetti, Assistant Attorney General,* for intervener, respondent in the main action.

MR. JUSTICE SNYDER delivered the opinion of the Court.

In 1947 Pedro A. Pizá, Inc. sold two trucks which it had in stock to Ochoa Fertilizer Corporation at a price which included the excise tax. Pizá paid the tax to the Treasurer as required by law.[1] Ochoa petitioned the Treasurer for refund of the tax on the ground that it was exempt from taxation, see *Buscaglia Treas.* v. *Tax Court,* 66 P.R.R. 670. The Treasurer denied the petition. His position was that the taxable event was introduction of the trucks into Puerto Rico; that introduction was effectuated by Pizá and not by Ochoa; and that Ochoa's exemption would apply herein only if it were the "efficient importer". Suit for refund was filed in the Tax Court by Pizá, for the benefit of Ochoa. The Tax Court dismissed the case for lack of jurisdiction pursuant to Act No. 137, Laws of Puerto Rico, 1945. We granted certiorari to review this decision.

---

[1] Section 39 of the Internal Revenue Law, as amended by Act No. 78, Laws of Puerto Rico, 1945, provides for payment of excise taxes, imposed under § 16, by the person introducing or selling the articles. In the case of automobiles, § 39 (*d*) provides for payments 6 months after introduction if not sold prior thereto. In the latter event, the vendor must pay the tax within 10 days after the date of the sale.

Subsequent amendments to § 39, as found in Act No. 426, Laws of Puerto Rico, 1947, Acts Nos. 168 and 177, Laws of Puerto Rico, 1948, and Acts Nos. 97 and 112, Laws of Puerto Rico, 1949, do not change the pertinent language of § 39 insofar as this case is concerned.

And see Act No. 77, Laws of Puerto Rico, 1944.

■■ We do not stop to determine whether this suit should have been brought by Ochoa or by Pizá. Construing the pleadings liberally, we interpret them as bringing both corporations before the court. Also, we need not pass on the contention of the Treasurer that under § 16(8) of the Internal Revenue Law [2] the taxable event here was introduction into Puerto Rico of the trucks by Pizá. [3] For purposes of this case, we assume, without deciding, that the first taxable event was the sale of the trucks by Pizá to Ochoa. But even under this assumption, Pizá rather than Ochoa was the taxpayer. As we pointed out in *Porto Rico Telephone Co.* v. *Tax Court*, 68 P.R.R. 144, 153, "In examining our sales tax, we find that it is imposed legally on the vendor. Unlike the situation in some states, the vendor is neither forbidden nor required to add the tax to the sales price. He is left free to do as he chooses." [4]

Since Pizá was legally liable for the taxes herein, it follows that the Tax Court was correct in holding that it lacked jurisdiction in this case by virtue of § 4 of Act No. 169, Laws of Puerto Rico, 1943, as amended by Act No. 137, Laws of Puerto Rico, 1945. [5] As we pointed out in *Standard Commercial Tobacco Company, Inc.* v. *Tax Court*, 71 P.R.R. 701, § 4 establishes two prerequisites for jurisdiction of the Tax Court: (1) the suit must be by the taxpayer; (2) the plaintiff must have in fact suffered the economic burden of the tax. Neither

---

[2] Act No. 437, Laws of P. R., 1946. See also Act No. 425, Laws of P. R., 1947; Act No. 147, Laws of P. R., 1949.

[3] The Treasurer relies on *Buscaglia* v. *Ballester*, 162 F. 2d 805, 808 (CA 1, 1947), cert. denied 332 U. S. 816; *West India Oil Co.* v. *Domenech*, 311 U. S. 20. But *cf. Ballester Hermanos* v. *Tax Court*, 66 P.R.R. 531, 553–54, footnote 21. We leave open the effect of the reversal of the latter case in 162 F. 2d 805 on the arguments contained in footnote 21.

[4] It is true that in the *Telephone Co.* case we went on to say that (p. 154) ". . . in most cases by force of economics the vendor will shift the burden of the tax to the consumer." In fact, it was on this theory that we upheld the use tax. That is to say, we pointed out that the use tax was economically equivalent to the sales tax, since the latter—as well as the use tax—fell *economically* on the consumer. But that was a constitutional question. Here the only problem is whether the tax is *legally*

Pizá nor Ochoa meets both of these tests. Pizá was the tax-payer, but it passed the burden of the tax on to Ochoa. And although Ochoa suffered the burden of the tax, it was not the taxpayer.

The petitioners argue that the Legislature meant to provide in Act No. 137 that any person who had suffered the economic burden of an excise tax, whether or not he was the taxpayer, could sue in the Tax Court. We rejected this argument in the *Standard Commercial* case and do so again. For it to prevail we would have to hold that in enacting this statute the Legislature intended to enlarge the jurisdiction of the Tax Court. Under this theory, if an excise tax imposed by law on the first vendor should eventually be held invalid, any ultimate consumer, no matter how remote, of all sorts of merchandise could sue in the Tax Court if he could show that the tax had finally been passed on to him as part of the purchase price. We are satisfied that the Legislature did not intend to *enlarge* the jurisdiction of the Tax Court in this manner. On the contrary, the purpose of Act No. 137 was to *restrict* the jurisdiction of the Tax Court in order to prevent unjust enrichment. The Legislature foresaw the possibility that some taxpayers might receive a windfall because a particular excise tax had been declared invalid years after the taxpayers on whom the taxes were imposed by law had paid them and had passed the burden thereof to their

imposed on the vendor or the vendee. In other words, in this case legal liability, not economic equivalence, is decisive. And as noted, our sales tax is *legally* on the vendor.

[5] Section 4 as thus amended, in providing for the jurisdiction of the Tax Court in cases involving excise taxes, reads in part as follows: "When the case concerns a demand for payment made by the Treasurer by virtue of any excise or license tax levied by the Internal Revenue Laws of Puerto Rico or by the Beverages Act of Puerto Rico or by any other Act levying excises or license taxes, appeal may be taken to said court only by the person or entity which may have in fact suffered the burden of paying the excise or tax, and an allegation in this sense and the evidence thereof at the proper time shall be considered as jurisdiction requirements."

vendees.[6] It therefore closed the doors of our courts to such cases.[7] Only taxpayers who had absorbed the taxes and had not passed them on to their vendees could sue therefor.[8]

It remains to note one argument with reference to Act No. 137. The petitioners contend that it does not apply to this suit for refund inasmuch as it provides that it shall apply "When the case concerns a demand for payment made by the Treasurer . . .". To agree with this argument would be to hold that the Legislature meant to grant jurisdiction when the taxpayer paid pursuant to demand by the Treasurer but not voluntarily. We think the Legislature intended no such discrimination. The explanation is simple. Act No. 137 was passed at a time when the Legislature and the Treasurer were both under the impression that suits for refund of excise taxes would lie only if they had been paid under protest after a demand by the Treasurer. The Legislature therefore obviously intended that *all* suits for refund of excise taxes· must conform to the requirements of Act No. 137. It mentioned a demand for payment by the Treasurer only because of its impression that those were the only suits which could be brought at that time. Thereafter, we held that a suit for refund would lie even after voluntary payment without demand. *Gerardino* v. *Tax Court*, 68 P.R.R. 206, 210, and cases cited. Despite the literal language of Act No. 137, we therefore believe, in view of the foregoing sequence of events, that the Legislature intended for Act No. 137 to apply to all suits for refund of excise taxes, including the instant case

[6] *Cf.* *P. R. Tobacco Corp.* v. *Buscaglia, Treas.*, 62 P.R.R. 782; *A. Fisher Tobacco Co.* v. *Buscaglia, Treas.*, 65 P.R.R. 115; *R. Santaella & Bros., Inc.* v. *Tax Court*, 66 P.R.R. 819.

[7] *Cf.* Act No. 67, Laws of Puerto Rico, 1945, enacted at substantially the same time, which imposed an 80% unjust enrichment tax whenever a plaintiff received reimbursement of taxes which had been passed on to his vendee as part of the sales price. See also Act No. 286, Laws of Puerto Rico, 1946; Act No. 234, Laws of Puerto Rico, 1949. *Cf.* 26 U.S.C.A. §§ 700 *et seq.; U. S.* v. *Kansas Flour Corp.*, 314 U. S. 212.

[8] It goes without saying that the Legislature had the power to withdraw its consent for the sovereign to be sued for refund of taxes. *Gerardino* v. *Tax Court*, 68 P.R.R. 206, 210, and cases cited.

where the payment was voluntarily made without a demand by the Treasurer.

Relying on *West India Oil Co.* v. *Tax Court*, 65 P.R.R. 70, the petitioners assert that they are entitled to prevail on the merits. The Treasurer, on the other hand, strenuously argues that the *West India* case was wrongly decided and should be reversed.[9] We never reach this question as neither the Tax Court nor this Court has jurisdiction in this case.

We recognize that the practical effect of Act No. 137 is to close the doors of the courts to any attempt to enforce the rights of a tax-exempt vendee under the circumstances of this case, without reference to whether the *West India* case was erroneously or correctly decided. And such a vendee is unlikely to obtain from the Treasurer without judicial action a refund of a tax paid by the vendor and charged to the vendee as part of the purchase price, as the Treasurer has consistently maintained that the *West India* case is erroneous. However, there may be ways in which a vendee exempt from excise taxes may make his exemption economically effective. *Cf. Buscaglia, Treas.* v. *Tax Court*, 66 P.R.R. 670, 679. In any event, what relief, if any, should be provided for tax-exempt vendees under the circumstances herein is a matter for the Treasurer and the Legislature to determine. The only question before us is one of jurisdiction. And the courts are foreclosed from action by Act No. 137.

The decision of the Tax Court will be affirmed.

---

[9] The Treasurer relies, among other authorities, on Annotations, 115 A.L.R. 667, 132 A.L.R. 706; *Lash's Products Co.* v. *United States*, 278 U. S. 175; *Pure Oil Co.* v. *State*, 12 S (2d) 861, (Ala., 1943); *Alabama* v. *King & Boozer*, 314 U. S. 1.