[No. 847-2.    Division Two.    January 10, 1974.]

MOUNTAIN PACIFIC CHAPTER, ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INC., *Plaintiff,* BUTLER CONSTRUCTION AND ENGINEERING CO., *et al.,* *Appellants,* v. THE STATE OF WASHINGTON *et al., Respondents.*

*Herman S. Siqueland* (of *Carney, Stephenson, Siqueland, Badley & Smith*), for appellants.

*Slade Gorton, Attorney General,* and *William G. Boland* and *Michael E. Stevenson, Assistants,* for respondents.

PETRIE, J.—Effective July 1, 1971, chapter 299, Laws of 1971, 1st Ex. Sess., amended the statutory definitions of the terms "sale at retail" and "consumer" as defined in RCW 82.04, the business and occupation tax act. By statute, those redefinitions apply equally to the provisions of RCW 82.08, the retail sales act. RCW 82.08.010 (4). We are concerned herein with application of those redefinitions to a limited class of state sales tax obligations.

Prior to July 1, 1971, contractors on state highway construction contracts were considered "consumers" in respect to tangible personal property even though such property became incorporated as an ingredient or component of the publicly owned highway. Under the statutory scheme of the sales act the seller of that property had imposed upon him the duty to collect and remit the tax, based upon the purchase price, if any, paid by the contractor, and the purchaser of that property had the duty imposed upon him to pay the tax to the seller. *Morrison-Knudsen Co. v. Department of Revenue,* 6 Wn. App. 306, 493 P.2d 802 (1972). Accordingly, the contractor's supplier had the obligation to collect and remit the tax; the contractor, as buyer, had the ultimate obligation to pay the tax.

On and after July 1, 1971, the state became the "con-

sumer," and thereafter contractors engaged in the business of constructing state highways were no longer considered consumers with respect to tangible personal property which became incorporated as an ingredient or component of a state highway. Accordingly, as to such property, the contractor became the seller, with the obligation to collect and remit the tax, based upon the purchase price paid by the state; the state became the buyer upon whom was imposed the ultimate obligation to pay the tax.

In the case at bench, we are concerned only with the relative responsibilities of the contractors and the Department of Highways of the State of Washington with respect to those state road building contracts (1) which had been let prior to July 1, 1971; (2) which were still ongoing as of that date; and (3) under which contractors, after that date, purchased materials which subsequently became incorporated as an ingredient or component into a state highway. The controversy developed when the state assumed the posture that it would retain, as a setoff against the contract price, the amount of any tax which the state was obligated to pay because it became the buyer and the contractor became the seller, by virtue of these statutory amendments which became effective July 1, 1971.

In an appropriate class action, the contractors filed this action against the Washington State Highway Commission seeking declaratory definition of the respective rights and obligations of the parties to these ongoing contracts and contending, further, that the defendant's refusal to make progress payments in the full amount established by contract constituted a breach of those contracts. The defendant commission answered, contending in part that it had no obligation under the terms of the contract to pay the state sales tax to the contractors. The defendant's position is that the contractors have been unjustly enriched, by the statutory redefinitions, to the detriment of the defendant. After considering the pleadings, various admissions of fact and affidavits of the parties, all of which are now before us, the trial court granted defendant's motion for summary judg-

ment and denied the contractors' motion for summary judgment. The effect of the court's order is an adjudication that the defendant state has a right to a setoff against its contractual liability to those contractors who included state sales tax within their various unit bid prices, the amount of the setoff being the amount which those contractors would have paid in state sales tax, on materials purchased by them after July 1, 1971, for incorporation into the highway construction projects, had the specific redefinitions enacted by the legislature in 1971 not been adopted. The contractors have appealed to this court.

We note initially that the defendant commission does not rely upon any specific contractual provision which authorizes it to withhold full payment of the contract price. The defendant's contention, as asserted in its brief, is quite simply that failure to withhold contract payments in the amount of the tax which the contractors are no longer required to pay "would become a windfall for the contractors, unjustly enriching them at the expense of the state."

There can be no doubt that the contractors received a "windfall." But the real issue is whether or not permitting the contractors to retain the "windfall" would be unjust. *Chandler v. Washington Toll Bridge Authority*, 17 Wn.2d 591, 137 P.2d 97 (1943).

In support of their contention that unjust enrichment does not lie, the contractors direct our attention to a clause common to all their contracts, a standard specification designated section 1-07.2, which provides in part:

> No *adjustments* will be made in the amount to be paid by the State under the contract *because of any change in law* or regulations covering any applicable taxes, or because of any misunderstanding by the Contractor as to his liability for or the amount of any taxes.

(Italics ours.)

A party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract.

*Chandler v. Washington Toll Bridge Authority, supra.* The defendant contends that its assertion of unjust enrichment is not in contravention of the express contract because the intent of the quoted portion of section 1-07.2 was to provide contractual resolution of issues only in the event of *increases* in the tax rate during the life of the contract—not structural changes in the sales tax scheme which shift[1] ultimate tax liability from one party to another.

■ It is rather difficult to reconcile the defendant's limited interpretation of section 1-07.2 with the actual language embodied in the contract. It may well be that the only types of changes in the sales tax scheme, which had previously affected highway construction contracts, were increases in the rate of taxation. That is not sufficient evidence of intent to restrict the meaning of the clause in question in the face of the broad language used.

We hold, therefore, the parties intended the clause to mean precisely what it said—that *no* adjustments will be made in the contract price agreed upon because of *any* change in the tax law. Accordingly, the parties entered into the contracts having in mind that the legislature might enact statutory changes in the retail sales tax laws; further, they provided in their contracts, that in the event of any statutory changes there would be no adjustment in the contract price. It follows, then, that the benefit which accrued to the contractors is not an unjust benefit when the contractors are merely asserting their contractually provided right to receive full payment of the contract price which had been accepted by the commission when the contract was let.

■ Accordingly, since the contracts established unit prices, which included the amount of tax initially contem-

---

[1]The redefinitions accomplish more than merely a "shift" of tax liability from one party to another. The amount of the tax ultimately collected by the Revenue Department has been increased because the calculation after July 1, 1971, is based upon the price paid by the state whereas the tax collected prior to the changes was based upon the price, if any, paid by the contractors from their sellers, if any.

plated, the tax was absorbed within the composite price. *Lucas v. Panos,* 190 Wash. 402, 68 P.2d 617 (1937); *Campbell Co. v. Holsum Baking Co.,* 15 Wn.2d 239, 130 P.2d 333 (1942). The setoff should not be allowed and the judgment should be reversed.

We believe the foregoing views dispose of the issues presented by this appeal, but the commission directs our attention to decisions in several federal jurisdictions which hold, under contractual provisions therein being interpreted, that the amount of the taxes is not absorbed within a contract price. *United States v. Kansas Flour Mills Corp.,* 314 U.S. 212, 86 L. Ed. 159, 62 S. Ct. 232 (1941); *United States v. American Packing & Provision Co.,* 122 F.2d 445 (10th Cir. 1941); *cert. denied,* 314 U.S. 694, 86 L. Ed. 555, 62 S. Ct. 364 (1941); *Suncook Mills v. United States,* 44 F. Supp. 744 (D. Mass. 1942).

All those cases, however, involved contracts which contained tax clauses substantially different from the tax clause involved in the case at bench. In those cases, the contract price was scheduled to *increase or decrease* in accordance with congressionally imposed tax changes. The issues therein arose when tax changes occurred, not by congressional action, but rather, by action of the court which declared that the Agricultural Adjustment Act of 1933, which had imposed the tax liability, was unconstitutional. *See United States v. Butler,* 297 U.S. 1, 80 L. Ed. 477, 56 S. Ct. 312, 102 A.L.R. 914 (1935).

In *Suncook Mills,* as in the other two cases, "the purpose of the government was to protect the seller's margin of profit over the amount of the tax." *Suncook Mills v. United States, supra* at 746. In the case at bench, even under the commission's limited concept of the tax clause, the seller's margin of profit was not protected in the event of an increase in tax liability. We think the distinction is vital. In one instance, the intent was manifest that the amount of the tax payable would have no effect upon the seller's profit. In the other instance (the case at bench), the intent was manifest that the amount of the tax payable would

have an effect, favorable or adverse, upon the seller's profit. In one instance, there is a basis for a claim of unjust enrichment; in the other, there is no such basis.

Judgment reversed with direction to grant the contractors' motion for summary judgment.

PEARSON, C.J., and ARMSTRONG, J., concur.

Petition for rehearing denied February 14, 1974.

Review denied by Supreme Court April 30, 1974.