## Sparks Milling Co. v. Powell et al.

May 17, 1940.

R. Campbell Vansant, Special Judge.

H. R. Wilhoit for appellant.

S.. S. Willis and R. T. Kennard for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

The appellant, Sparks Milling Company, beginning on October 2, 1934, made sales of flour to the appellee, Midland Baking Company. Two sales were made in 1934 and two additional sales in January and February of 1935, the four sales aggregating 735 barrels. There was a delay in payment for 190 barrels sold on February 6, 1935, and as a result thereof officials of the Milling Company consulted with the appellee, J. T. Powell, president of the Baking Company, and state that they informed him that he must see to and be responsible for payment for flour sold in the future. This is denied by Powell but, in any event, flour thereafter sold by appellant for use of the Baking Company was billed to Powell and received and used by the Baking Company, 970 barrels thus billed to Powell in five shipments made in the year, 1935, down to and including November 7. All shipments were paid for except the last two, aggregating 420 barrels, and a sufficient amount was paid on them to leave a balance of $2,181.84 due, according to the Milling Company's account. Suit was filed by the Milling Company against Powell and the Baking Company for this balance. The Baking Company claimed credit thereon for freight paid by it amounting to $470.73, leaving a balance of $1,711.11. By counterclaim the appellee, Midland Baking Company, asserted that the Milling Company had collected from it processing taxes of $1.38 per barrel, due under the Agricultural Adjustment

Act, 7 U. S. C. A., Section 601 et. seq., amounting to a total of $2,355.68. A jury was waived, and on final submission the trial court found that appellees were entitled to a credit for $470.73 for freight paid and also found that appellees were entitled to recover on the counterclaim the amount of the processing taxes included in the price of the flour. Judgment was accordingly rendered in favor of appellees against appellant for $644.57. This appeal is from that judgment.

Each of the contracts of sale contained the following provision:

"Taxes: The price named in this contract includes all taxes as at the date hereof proclaimed by the Secretary of Agriculture by virtue of the authority vested in him by the Agricultural Adjustment Act of the United States. Under said Act it is provided that said taxes may be changed from time to time. It is recognized by the parties hereto that there is a growing tendency on the part of the United States and the separate states to tax grain products, containers and other items used in connection with the manufacturing, processing, blending, sale or distribution thereof. It is, therefore, agreed and understood that if, after the date of this contract, the commodities and/or containers, or other items used in connection with the manufacturing, processing, blending, sale or distribution thereof, shall became subject to any increase in taxes or to any new or additional tax or taxes other than those included in the price hereof, (if the seller shall be required by law to collect such increases or additional taxes) then, in that event, said increases or additional taxes shall be added to the price hereof; and correspondingly if any tax included in the price hereof shall be decreased or abated, then, in that event, said decrease or abatement shall be deducted from the price hereof."

It was alleged by the Baking Company that the Milling Company did not pay the processing taxes or any part thereof to the United States but kept and retained same in its possession. This allegation was denied by the Milling Company in specific terms. No proof was introduced on this issue; consequently, if it be deemed material to a decision of the controversy, we

must assume that the taxes collected were paid by the Milling Company to the Federal Government.

It seems to be the theory of the appellees that they are entitled to recover the processing taxes under the language quoted above from the contracts of sale, but that if they are not entitled to recover under this express contract, the contracts of sale should be construed to contain an implied promise to refund that part of the purchase price which went to make up the processing tax. It seems clear, however, that if there is to be a recovery it must be under the express contract, since it is well settled that where an express contract is made defining the circumstances under which an obligation may arise with reference to a certain subject matter such contract excludes the possibility of an implied contract concerning the same matter. This rule is material to the present controversy by reason of the fact that in certain cases of the sales of goods where the promise of the buyer is to pay a stated price and put the seller in funds for the payment of a tax besides, the failure of the tax reduces to an equivalent extent the obligation of the buyer's promise, and if the tax has been paid and is later declared unconstitutional there is an implied obligation on the part of the seller under some circumstances to refund the tax to the buyer. Wayne County Produce Company v. Duffy-Mott Company, 244 N. Y. 351, 155 N. E. 669. As pointed out in the case last cited, where the item of the tax is absorbed in a total or composite price to be paid at all events, the buyer is without remedy although the annulment of the tax may increase the profit to the seller. See also Johnson v. Scott County Milling Co., D. C., 21 F. Supp. 847; O'Connor-Bills v. Washburn Crosby Co., D. C., 20 F. Supp. 460; Lash's Products Co. v. United States, 278 U. S. 175, 49 S. Ct. 100, 73 L. Ed. 251. As the contract in question provided that the price named in it included processing taxes then imposed and as the tax was not billed or set out as a separate item, it was a composite price according to the authorities cited and, were there no express contract governing the rights of the parties, there could be no recovery of the taxes because the sale was for a composite price. At all events we are plainly relegated to determining whether there may be a recovery of the taxes under the express contract between the parties.

The Agricultural Adjustment Act was held uncon-

stitutional in United States v. Butler, 297 U. S. 1, 56 S. Ct. 312, 80 L. Ed. 477, 102 A. L. R. 914, and it is the theory of the appellee that the concluding words of the quoted provision from the contract covered the contingency of the tax being declared unconstitutional; that the word "abated," as there used covered the judicial declaration of invalidity within the meaning of the contract, entitling them to recover $1.38 per barrel on each barrel of flour purchased by them. On the other hand, it is the theory of appellant that the words "abated" and "abatement" must be construed in the light of the whole context of the contract and that when so construed they covered only an abatement of tax as provided for under the Agricultural Adjustment Act itself through and by the agencies designated by the Act. In short appellant contends that the judicial declaration of invalidity announced in United States v. Butler, supra, was not an abatement within the meaning of the contract.

Appellees cite the dictionary meaning of the word "abate" as being "to bring entirely down or demolish; to put an end to; to do away with"; and insist that the word "abate" as used in the contract must be given this usual and ordinary meaning. Undoubtedly words will be given their ordinary meaning when nothing appears to show that they are used in a different sense but it is equally as well settled that words are to be narrowed or broadened, as the case may be, by the purpose made evident by the whole writing and where it is shown by the whole context of the writing that they were employed in a certain sense, they can only be given such definition as satisfies that sense. 12 A. J. 760, et seq. Union Light, Heat & Power Company v. Young et al., 146 Ky. 430, 142 S. W. 692; Sower, Trustee, v. Lillard et al., 207 Ky. 283, 269 S. W. 330; McKinney's Heirs et al. v. Central Kentucky Natural Gas Co., et al., 134 Ky. 239, 120 S. W. 314, 20 Ann. Cas. 934. It is equally true that where words having a definite legal meaning are knowingly used in a writing the parties will be presumed to have intended such words to have their proper legal meaning in the absence of any contrary intention appearing in the instrument. All such rules of construction are, of course, directed to the end that the true intent and meaning of the parties to the instrument may be ascertained.

Considering the contract here involved in the light of these principles of legal construction, we cannot escape the conclusion that the words "abate" and "abatement" were used with a restricted legal meaning and were not intended to mean or include a judicial declaration of invalidity. Section 9 of the Agricultural Adjustment Act, 7 U. S. C. A., Section 609, authorized the Secretary of Agriculture to adjust the amount of the processing tax within certain limits and Section 15(a) of that Act, 7 U. S. C. A., Section 615(a), authorized the Secretary of Agriculture to abate or refund any processing tax within certain prescribed limitations. The words used in the Act to denote or describe a change in the tax are "abate," "refund," "increase," and "decrease" and these identical words are used in the contract in question. This indicates to us plainly that the word "abate" appearing in the contract was used in the same sense that it was used in the Act and as used in the Act it meant an abatement by the Secretary of Agriculture. In short, there was no abatement of the processing tax in the sense that that term was used in the Act, and the sense in which that term was used in the Act is the same sense to be ascribed to it in the contract—"abatement," as used in the contract, was not intended by the parties to include the contingency of a judicial declaration of invalidity.

If the parties intended to provide that the Milling Company should refund to the Baking Company that part of the purchase price of the flour which represented the amount of the processing taxes from which the Milling Company was relieved by the Act being adjudged unconstitutional, it would have been easy for them to have used apt language to that effect. They did not do this but chose to provide only for a deduction from the price in the event of a decrease in the tax or an abatement of the tax as provided for under the Act itself through and by the agencies designated by the Act. The identical question confronting us was presented in Johnson v. Igleheart Brothers, 7 Cir., 95 F. (2d) 4, and Moundridge Milling Company v. Cream of Wheat Corporation, 10 Cir., 105 F. (2d) 366, and in each of those cases it was held that the words "abate" and "abatement," as used in contracts identical with the contract in the instant case, did not include the judicial declaration of invalidity but were used only in the sense in

which they were used in the Agricultural Adjustment Act and meant an abatement through and by the agencies designated in the Act. In each of those cases a recovery of the processing taxes was denied.

It is urged by appellees that a denial of the recovery of the processing taxes paid by them to appellant would result in an unjust enrichment of appellant. The same argument was made in Johnson v. Igleheart Brothers, supra, and answered in the following language [95 F. (2d) 8]:

> "The argument that the agreement covered the contingency of the process tax being held invalid is somewhat impaired by the fact that another tax has been passed by Congress (the Windfall Tax) to take its place. If we step outside the strict letter of the contract to a consideration of what might be called the equities of the situation, it would appear harsh and illogical to hold that a sum equal to the tax must be returned to the plaintiff even though a valid substitute tax to the extent of 80 per cent. thereof should be subsequently imposed upon and paid by the defendant. This possibility furnishes added reason for construing the contract according to its language, giving to each word its proper meaning."

In any event, we must construe the contract to ascertain the intention of the parties, regardless of the equities of the situation, and, as indicated above, it seems clear that the contract did not cover a return of processing taxes to the Baking Company in the event the Act was declared unconstitutional.

The judgment is reversed with directions to enter judgment in favor of appellant for $1,711.11, the balance found by the trial court to be due on the purchase price of the flour.