William R. Brown and W. Robert Brown, Appellants, v. The Kerber Packing Company, Appellee.

Case No. 45,203.

Opinion filed January 31, 1951. Released for publication March 13, 1951.

W. ROBERT BROWN, of Chicago, for appellants.

MAYER, MEYER, AUSTRIAN & PLATT, of Chicago, and ROBERT L. KEMLER, of Elgin, for appellee; PAUL M. GODEHN, of Chicago, of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

William R. Brown and W. Robert Brown, as the sole surviving partners of a copartnership doing business under the name of Processing Tax Service Associates, filed an amended three-count complaint at law in the circuit court of Cook county against the Kerber Packing Company, a corporation, for damages based on a written personal service agreement under which defendant employed the copartnership in connection with processing taxes under the Agricultural Adjustment Act. On issue joined the case was tried before the court without a jury and resulted in a finding and judgment against plaintiffs. They appeal and ask that the judgment be reversed and that the cause be remanded

with directions to enter judgment in their favor. The contract between the parties dated November 29, 1933, reads:

"Kerber Packing Co. employs the Processing Tax Service Associates as agents to recover and obtain abatement, credit or refund of the floor and/or processing tax on agricultural commodities paid directly or indirectly to the Federal Government and/or the seller, or included in the price of such commodities, and agrees to pay said agents twenty-five per cent (25%) of all sums recovered, abated, credited or refunded. Unless our approval is first obtained, no expenses incurred by the agents will be advanced."

Counts 2 and 3, grounded on credits or refunds, are no longer material since plaintiffs agree that the defendant received no credits or refunds.

A Federal statute known as the Agricultural Adjustment Act, approved by the President on May 12, 1933, provided that there should be levied, assessed and collected on the first domestic processing of certain basic agricultural commodities, alleged taxes called processing taxes, to be paid by the processors. The revenues thus derived were to be used by the Secretary of Agriculture to make benefit payments to producers of such basic agricultural commodities to induce them to curtail production and thereby bring about an increase in the market price of such commodities. The Secretary of Agriculture determined that hogs were a basic agricultural commodity within the meaning of the Act; that benefit payments should be made with respect thereto; and that processing taxes should be imposed on the first domestic processing of hogs, that is the slaughter of hogs, effective November 5, 1933. Defendant, located at Elgin, Illinois, was a processor of hogs within the meaning of the Act, filed monthly processing tax returns and paid processing taxes

beginning November 5, 1933. Payments of processing taxes were made in the aggregate amount of $202,682.05 to and including March 1935. Various processors instituted actions in a number of Federal courts and sought to enjoin payment of processing taxes on the ground that the statute was unconstitutional. The first injunctional suits in this district were filed on July 31, 1935, on behalf of Wilson & Company and five subsidiary companies. William R. Brown, one of the plaintiffs, was the attorney in these six suits, and his arguments were the basis for the first injunctions issued thereafter on August 7, 1935.

In September 1935, defendant employed attorneys, other than the partners hereinbefore mentioned, to represent it with respect to processing taxes. These attorneys prepared and filed a complaint for injunctive relief in the Federal Court for the Northern District of Illinois against the Collector of Internal Revenue for the district. On October 8, 1935, the court enjoined the collector from collecting or attempting to collect any processing taxes then due or thereafter to become due. At that time the unpaid processing taxes which had been assessed against the defendant amounted to $57,530.77, and defendant furnished a surety bond in that amount conditioned as required by the Judicial Code. On November 7, 1935, the Federal District Court entered an order continuing the injunction of October 8, 1935, in effect until the further order of the court on condition that all processing taxes accruing against defendant for September 1935, and subsequent months be deposited from month to month with a bank in a special deposit account, subject to withdrawal by order of court.

On January 6, 1936, the United States Supreme Court held (*United States v. Butler*, 297 U. S. 1), that the Agricultural Act was not within the powers delegated to Congress and that the Act invaded the re-

served powers of the States contrary to the 10th Amendment of the Federal Constitution. On January 21, 1936, the Federal District Court entered a further order finding that defendant was not liable to pay any processing taxes imposed under the Agricultural Adjustment Act, and directed that the surety bond furnished by defendant in the amount of $57,530.77 be canceled and that the bank pay to defendant all deposits made by it pursuant to the order of November 7, 1935. Thereupon the deposits made with the bank were returned to defendant. The total of the deposits so returned, plus the principal amount of the canceled surety bond, was $102,043.64. This represents the total amount of processing taxes which were not paid to the Collector of Internal Revenue by defendant because of the injunctive orders herein mentioned. Plaintiffs' claim is for the recovery of 25 per cent of this amount, or $25,510.91, plus interest computed at the rate of 5 per cent per annum from January 21, 1936. The attorneys who represented defendant in the injunction proceedings of 1935 and 1936 were paid a fee of $1,000 for their services.

Title III of the Revenue Act of 1936, commonly called the Unjust Enrichment Act, was approved on June 22, 1936. The theory of this Act was that the processors who had avoided the payment of processing taxes by means of injunctions had been unjustly enriched by shifting the burden of the processing taxes to others, either by means of a decrease in prices paid for raw materials, such as hogs, or an increase in prices charged for finished commodities, such as pork. On December 15, 1936, defendant filed a tentative return of tax on unjust enrichment under Title III of the Revenue Act of 1936, showing that the estimated amount of tax due was "None." On June 15, 1937, defendant filed a final return showing a tax due on unjust enrichment of $11,961.17, less a credit for in-

come and excess profits taxes paid in the amount of $2,242.72, leaving a balance of tax due of $9,718.45. This tax was paid on June 16, 1937. The Revenue Act of 1936 authorized the Commissioner of Internal Revenue to enter into closing agreements with taxpayers, determining the tax due on unjust enrichment. On July 31, 1939, defendant entered into an agreement with the commissioner, providing that the total liability for tax on unjust enrichment was finally settled by the payment of $36,639.77. The closing agreement shows that in the final settlement defendant obtained no recovery, abatement, credit or refund of processing taxes previously paid. The agreement states that the method of payment of the agreed amount of $36,639.77 was:

> "(by the taxpayer............$36,639.77
> (as refund to the taxpayer... None"

Upon the execution of the closing agreement defendant paid to the collector $36,639.77. Summarizing the foregoing, processing taxes actually paid by defendant to the collector amounted to $202,682.05. The processing taxes for which returns were filed but which were not paid because of the injunctive orders entered in the district court amounted to $102,043.64. The unjust enrichment tax paid by defendant amounted to $36,639.77.

Plaintiffs maintain that defendant received an abatement of processing taxes, assessed against but unpaid by it, and thereby became obligated under the express language of the contract to pay the contingent fee provided in such case. Defendant rejoins that none of the contingencies enumerated in the agreement of November 29, 1933, happened, and that therefore no compensation is due to plaintiffs. Plaintiffs assert they were employed as defendant's agents to perform whatever services might be required to obtain abatement, credit or refund of defendant's processing taxes; that

479

the words abatement, credit or refund are all-inclusive and cover every possible type of tax relief; that they, plaintiffs, were ready, willing and able to perform whatever services were required to file suit and obtain a court order restraining collection of the processing tax assessed against but unpaid by defendant for the months from March to December 1935; that defendant failed and refused to authorize or direct plaintiffs to obtain such an injunction order, but instead voluntarily employed other attorneys to do so; that as a result of such an injunction suit defendant was relieved from and received abatement of processing taxes assessed against it in the total amount of $102,043.64; that defendant thereby became obligated under the terms of the written employment agreement to pay plaintiffs the fee expressly provided in such contingency; and that the defendant has breached the contract and is liable to them for damages in such amount.

██ It will be observed that plaintiffs were employed to "recover and obtain abatement, credit or refund" of processing taxes. They have no right to contingent compensation in the absence of a recovery, plus either an abatement, credit or refund of processing taxes. There is no claim that there was any recovery, credit or refund of processing taxes; nor was there any recovery of processing taxes by reason of the injunction. The object of the injunction suit was not to recover processing taxes, but to enjoin the collection of processing taxes. The agreement states that defendant employed plaintiffs to recover and obtain abatement of processing taxes on agricultural commodities "paid directly or indirectly to the Federal Government and/or the seller, or included in the price of such commodities." The record shows that there was no recovery, abatement, credit or refund of processing taxes "paid directly or indirectly to the Federal Government." The taxes of $102,043.64 on which plaintiffs

measure their claim for a contingent fee, were never paid to the Federal Government. The total amount consisted of $57,530.57, represented by the surety bond furnished to obtain a temporary injunction, and $44,513.07, representing money deposited by defendant in the bank which was subsequently returned to it. The Federal Government never acquired title, directly or indirectly, to any part of the unpaid processing taxes of $102,043.64. In our opinion plaintiffs did not obtain a recovery or abatement of processing taxes.

Plaintiffs urge that the words "abatement, credit or refund" cover every type of tax relief, and that the contract is all-inclusive both as to the services which the agents agreed to provide and as to the contingent fee which the defendant agreed to pay. To support their claim that the injunction constituted an abatement of processing taxes, plaintiffs rely on definitions of the word "abatement" in Webster's New International Dictionary, Second Edition, Bouvier's Law Dictionary and Black's Law Dictionary, and by statements of the court in *Gulf States Steel Co. v. United States,* 56 F. (2d) 43 (affirmed 287 U. S. 32); and *State v. Armstrong,* 17 Utah 166, 53 Pac. 981. We are of the opinion that these definitions and cases are not applicable to the factual situation presented by the record in the instant case. Defendant cites a number of authorities in support of its contention that the adjudication of the unconstitutionality of the Agricultural Adjustment Act did not constitute an abatement of processing taxes. In *Moundridge Milling Co. v. Cream of Wheat Corp.,* 105 F. (2d) 366, there was a sale of 3,000 barrels of middlings manufactured from wheat on which a processing tax of 30 cents a bushel had been assessed. The milling company obtained an injunction against the collection thereof and made deposits of accrued taxes with the clerk of the court, which deposits were returned to it after the opinion in the *Butler* case. The

481

contract under which the middlings were sold contained a provision that "if any tax included in the price hereof shall be decreased or abated, in that event, said decrease or abatement shall be deducted from the price hereof." Plaintiff therein maintained that this tax clause using the word "abatement" covered the contingency of the Agricultural Adjustment Act being declared unconstitutional, and that it had the right to recover that part of the purchase price of the middlings represented by processing taxes from which the Milling Company had been relieved because of the injunction and the return of the accrued taxes deposited with the clerk. The court denied recovery, saying (370):

"Here, there was no abatement in the sense that term is used in the act. The tax was illegal in that the act under which it was sought to be imposed was unconstitutional. The act being void, in legal contemplation there never was any tax."

See also *Johnson v. Igleheart Bros., Inc.,* 95 F. (2d) 4; *Crete Mills v. Smith Baking Co.,* 136 Neb. 448, 286 N. W. 333; *Sparks Milling Co. v. Powell,* 283 Ky. 669, 143 S. W. (2d) 75; *Southern Biscuit Co., Inc. v. Lloyd,* 174 Va. 299, 6 S. E. (2d) 601; and *Noll Baking & Ice Cream Co. v. Sparks Milling Co.,* 304 Ill. App. 624.

██ Plaintiffs point out that the cases cited by defendant involved the construction of particular tax clauses contained in flour purchase contracts during the period when flour millers had similar injunctions restraining collection of the processing tax on wheat. They say that none of the cases decides whether the relief obtained from the processing tax assessment was an abatement within the usual meaning of the term, but instead construed the use of such words under the particular context as being restricted to a special type of abatement, namely, one under the Act itself. In *Sparks Milling Co. v. Powell, supra,* the Court of

Appeals of Kentucky enumerated the words in the statute and then said (674):

"This indicates to us plainly that the word 'abate' appearing in the contract was used in the same sense that it was used in the Act and as used in the Act it meant an abatement by the Secretary of Agriculture."

We agree with defendant that the rule above quoted should be applied to the instant case. The subject matter of the contingent fee agreement of November 29, 1933, was processing taxes imposed under the Agricultural Adjustment Act, and we agree with the trial judge that the contract related to results which might be accomplished by administrative procedure rather than by attacking the constitutionality of the statute. In our opinion the word "abatement" used in the contract was not intended by the parties to include a determination of unconstitutionality of the entire statute by judicial decision. In *Johnson v. Igleheart Bros., Inc., supra,* the court said (8):

"The argument that the agreement covered the contingency of the process tax being held invalid is somewhat impaired by the fact that another tax has been passed by Congress (the Windfall Tax) to take its place. If we step outside the strict letter of the contract to a consideration of what might be called the equities of the situation, it would appear harsh and illogical to hold that a sum equal to the tax must be returned to the plaintiff even though a valid substitute tax to the extent of 80 per cent. thereof should be subsequently imposed upon and paid by the defendant. This possibility furnishes added reason for construing the contract according to its language, giving to each word its proper meaning."

To paraphrase the language of the Federal Court, it would be both harsh and illogical to hold that because defendant, acting by other attorneys, enjoined

483

the collection of processing taxes in the amount of $102,043.64, that plaintiff should be paid 25 per cent thereof notwithstanding the fact that a result of the injunction was that defendant became obligated to pay a tax on unjust enrichment in the amount of $36,639.77.

It is unnecessary to extend the opinion by discussing the other points urged by the parties. We are convinced that the trial judge was right in the finding and judgment entered. Therefore, the judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

KILEY and LEWE, JJ., concur.