RENDERED: JUNE 14, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0939-MR

STEWART SMITH AND SMITH                                    APPELLANTS
FAMILY VENTURES, LLC


APPEAL FROM FAYETTE CIRCUIT COURT
v.          HONORABLE LUCY ANNE VANMETER, JUDGE
ACTION NO. 19-CI-04395


TERRY L. HATTON; MALIBU
JACK'S 2, LLC; MALIBU JACK'S 5,
LLC; MALIBU JACK'S LOUISVILLE,
LLC; MALIBU JACK'S, LLC AKA
MALIBU JACK'S INDOOR THEME
PARK; STEPHEN D. HATTON; AND
STH ENTERPRISES, LLC                                        APPELLEES


OPINION
REVERSING
AND REMANDING

** ** ** ** **

BEFORE: COMBS, A. JONES, AND KAREM, JUDGES.

COMBS, JUDGE: Stewart Smith and Smith Family Ventures, LLC, appeal from

an order of the Fayette Circuit Court entered on June 6, 2023, granting summary

judgment in favor of Terry L. Hatton; Stephen D. Hatton; STH Enterprises, LLC;

Malibu Jack's LLC; Malibu Jack's Louisville LLC; Malibu Jack's 2 LLC; and Malibu Jack's 5 LLC (referred to collectively as "Malibu Jack's"). The trial court determined that the parties' written agreement was so indefinite in its terms as to cause it to be subject to an abbreviated five-year statute of limitations as though it were a contract *not* in writing. Additionally, it concluded that the doctrine of laches applied to the action for breach of contract. The court determined that Malibu Jack's was entitled to judgment as a matter of law because the action to enforce the contract was brought outside the five-year period -- and the court perceived that Smith and Smith Family Ventures had slept on their rights to enforce the agreement to the prejudice of Malibu Jack's. After our review, we reverse and remand for further proceedings.

The trial court accepted the following facts as undisputed. In the spring of 2013, Terry Hatton and Steve Hatton approached Stewart Smith about an investment opportunity -- "the Malibu Jack's concept." The parties had a long-standing business relationship after having "entered into various business deals dating back to 2007." The Hattons pitched to Smith their plan for an indoor theme park and presented him with a detailed business plan, including projections for startup expenses, monthly expenses, and total gross income. The business plan recounted how the Hattons had developed -- then sold -- Kentucky Basketball Academy in Lexington and explained that they were now interested in putting "all

-2-

their resources into a new venture." The Hattons envisioned themselves as part of the management team operating the business on a day-to-day basis.

On May 29, 2013, Malibu Jack's entered into a written agreement with Stewart Smith and Smith Family Ventures. In its entirety, the agreement provided as follows:

> In consideration for a loan to be made from Stewart A. Smith and/or Smith Family Ventures, LLC ("Smith") to Terry L. Hatton, Stephen D. Hatton, STH Enterprises, LLC, Malibu Jack and other related entities (collectively Hatton").
>
> The parties hereby agree to the following events to occur:
>
> (1) Upon Smith obtaining loans, Smith hereby agrees to provide a loan to Hatton in the amount of $400,000. Loan document shall be prepared.
>
> (2) Assignment of 35% lease/option agreement (attached) between STH Enterprises, LLC, KBA Sports, Inc. and Kentucky Basketball Academy, LLC dated March 8, 2011 and cash flow beginning presently payable monthly. This assignment shall be prepared by an attorney mutually agreed upon. Second mortgage (unrecorded) on Ruccio and Palumbo property since lease/option is not personally guaranteed by lessees. Upon default of lease/option agreement by lessees, loan still survives with a guaranteed interest rate of minimal 11% and aforementioned mortgage to be recorded; however, at the option of Smith upon default of lease/option he can retain 35% interest in property.
>
> (3) In lieu of ownership interests in the entities, Smith shall be entitled to 3% of gross revenues/royalty (including sale of business, property, real estate of any

-3-

business interests related to Malibu Jack concept, etc.) Monthly reports shall be provided with payment.

(4)  Hatton agrees to share pertinent financial information and records related to this transaction.

(5)  This agreement shall be binding upon and inure to the benefit of the parties hereto, respective heirs, legal representative, successors and assigns.

Smith Family Ventures borrowed the necessary sums and issued a check to Terry Hatton and STH Enterprises in the amount of $400,000.00.  Malibu Jack's executed the document contemplated by paragraph 1 of the agreement -- a demand note promising to repay to Smith the sum of $400,000.  Smith assigned the promissory note to Smith Family Ventures.

On August 16, 2013, STH Enterprises executed the document contemplated by paragraph 2 of the agreement -- an assignment to Smith Family Ventures of a 35% interest in the lease/option specifically described.  Additionally, on this date, STH Enterprises mortgaged to Smith Family Ventures the Ruccio property.  The Palumbo property referenced in paragraph 2 had not yet been purchased -- although it was contemplated as the location for Malibu Jack's theme park.

In September 2013, the Palumbo property was purchased.  Malibu Jack's opened for business later that fall.  The venture was immensely successful, and Malibu Jack's now has several locations across Kentucky and one in Indiana.

On November 15, 2013, shortly after the first Malibu Jack's opened, Smith corresponded with Terry Hatton reminding him of item (3) of their contract: that in lieu of taking an ownership interest in the theme park, Smith was to be paid "3% of gross revenues/royalty" to be accompanied by monthly sales reports. Smith indicated that he expected the payments of his portion of gross revenues to begin "with this first month (October)."

Terry Hatton disagreed that Smith was entitled to a percentage of gross revenue. He explained his understanding of the parties' agreement as follows: "you were going to get 3% of gross if we needed u to co-sign on the property on Blake James [the Palumbo property]. Our deal with [People's Exchange Bank] required SBA approval and did not require you to co-sign." Smith was not provided financial information related to Malibu Jack's operations nor was he ever paid a percentage of gross revenue. Loan repayments were made only on an intermittent basis.

In July 2016, Smith and Smith Family Ventures agreed to a modification of the $400,000.00 promissory note executed by Malibu Jack's in May 2013. Among other things, the original interest rate of 11% was revised to 9%, and the borrowers agreed to use their best efforts to repay the loan in full before December 31, 2016. However, the loan modification did not address the

parties' agreement with respect to Smith's interest in Malibu Jack's gross revenue/royalties.

On December 12, 2019, Smith and Smith Family Ventures filed a lawsuit for breach of contract against Malibu Jack's. They alleged that Malibu Jack's breached the agreement to repay the loan, which had an outstanding balance, including interest, of more than $290,000.00. They also alleged that Malibu Jack's breached the terms of the parties' agreement by failing to pay to them $75,000 (representing 3% of the sale of the Malibu Jack's located at the Palumbo property) and by failing to remit 3% of the monthly gross revenue/royalty realized by Malibu Jack's. Smith and Smith Family Ventures demanded an equitable accounting and presented claims based upon promissory estoppel and unjust enrichment. After the complaint was filed, the terms of the promissory note were satisfied. Claims related to this part of the parties' agreement were voluntarily dismissed. Malibu Jack's answered and denied the remaining claims asserted against them. They also asserted counterclaims. A period of discovery began.

On May 25, 2021, Smith and Smith Family Ventures filed a motion for partial summary judgment. They argued that the requirements of the parties' written agreement were plain and that Malibu Jack's simply breached the contract. Malibu Jack's responded, contending, in part, that the terms of the agreement were

ambiguous in many respects and that a genuine issue of material fact existed with respect to whether the parties intended for the loan modification agreement of 2016 to constitute a novation. Eventually, Malibu Jack's filed a cross-motion for summary judgment.

By its order entered on June 16, 2023, the Fayette Circuit Court granted, in part, Malibu Jack's motion for summary judgment. Reviewing its provisions, the court determined that the parties' 2013 agreement was ambiguous. Having determined that the parties' agreement was susceptible to inconsistent interpretations, it concluded that resort to parol evidence was required. However, it determined that "the matter is subject to resolution by a factfinder" and declined to grant summary judgment on this basis. The circuit court also declined to grant summary judgment on the basis that the subsequent loan modification of July 2016 was a novation that superseded the parties' original agreement.

However, the circuit court was persuaded that the parties' agreement of May 29, 2013, was so indefinite as to make it enforceable only within the abbreviated 5-year period of limitations included in the provisions of KRS[1] 413.120. It also concluded that "the expiration of some 70 months between the alleged breach of contract and the filing of this lawsuit [constitutes] an unreasonable delay worthy of the imposition of the doctrine of laches as a matter

---

[1] Kentucky Revised Statutes.

of law." Because the circuit court concluded that the parties had entered into a contract otherwise enforceable at law, it granted summary judgment notwithstanding the alternative, equitable theories relied upon by Smith and Smith Family Ventures as a basis for relief. The judgment was made final and appealable as the court found no just cause for delay.

On appeal, Smith and Smith Family Ventures argue first that the Fayette Circuit Court erred by concluding that Malibu Jack's was entitled to judgment as a matter of law because the parties' agreement was so vague as to be subject to a five-year period of limitations and that the equitable doctrine of laches applied to impede enforcement of its provisions. Next, they contend that the circuit court erred by concluding that Malibu Jack's was entitled to judgment as a matter of law with respect to the claims of Smith and Smith Family Ventures for relief based upon theories of promissory estoppel and unjust enrichment. Finally, Smith and Smith Family Ventures contend that the Fayette Circuit Court erred by concluding that Malibu Jack's is entitled to judgment as a matter of law with respect to their demand in equity for an accounting.

## ANALYSIS

Summary judgment is properly granted where the pleadings, depositions, answers to interrogatories, stipulations, admissions, and/or affidavits show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law.  CR[2] 56.03.  Our review of a summary judgment is always *de novo.  Cornett v. Student Loan Sols., LLC*, 672 S.W.3d 852 (Ky. App. 2023) (citing *Seiller Waterman, LLC v. Bardstown Cap. Corp.*, 643 S.W.3d 68 (Ky. 2022); *Cunningham v. Kroger Ltd. P'ship I*, 651 S.W.3d 199 (Ky. App. 2022)).

When parties arrive at an agreement and reduce it to writing, "all preliminary negotiations are conclusively presumed to have been agreed upon, and the writing itself to express the true contract, unless it is attacked for fraud or mistake." *Sanders v. Wender*, 205 Ky. 422, 265 S.W. 939, 940 (1924).  An unambiguous, written contract must be strictly enforced according to the plain meaning of its express terms and without resort to extrinsic evidence.  *Allen v. Lawyers Mut. Ins. Co. of Kentucky*, 216 S.W.3d 657 (Ky. App. 2007).  Even where the contracting parties intended a different result, a contract cannot be interpreted contrary to the plain meaning of its terms.  *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699 (Ky. 2006).  A contract is not ambiguous if a reasonable person would find its terms susceptible to only one meaning.  *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381 (Ky. App. 2002).  However, if the provisions in controversy are reasonably susceptible to different or inconsistent, yet reasonable, interpretations, the contract is deemed to be ambiguous.  *Cadleway Properties, Inc.*

---

[2] Kentucky Rules of Civil Procedure.

*v. Bayview Loan Servicing, LLC*, 338 S.W.3d 280 (Ky. App. 2010). Determining whether a contract is ambiguous is a question of law for the courts and is subject to *de novo* review. *Cantrell*, *supra.*

First, we address the contention of Smith and Smith Family Ventures that the Fayette Circuit Court erred by concluding that the parties' agreement was so vague as to be subject to an abbreviated period of limitations. Kentucky's fifteen-year statute of limitation, KRS 413.090, is applicable to an action concerning a written contract; a five-year statute of limitation, KRS 413.120, controls enforcement of an unwritten agreement.

In *Mills v. McGaffee*, 254 S.W.2d 716 (Ky. 1953), the Supreme Court of Kentucky considered whether the five-year limitation period for a nonwritten contract or the fifteen-year limitation period for a written contract controlled. The court observed as follows:

> [I]f the contract be partly oral and partly in writing or if a written agreement is so indefinite as to necessitate a resort to parol testimony to make it complete, the 5-year statute of limitations concerning 'contracts not in writing' would be applicable just as though the contract had rested entirely in parol. 53 C.J.S., *Limitations of Actions*, § 68, p. 1030. A written contract is one which is all in writing, so that all its terms and provisions can be ascertained from the instrument itself. 45 *Words & Phrases*, p. 605; 53 C.J.S., *Limitations of Actions*, § 60, p. 1017. The cases generally hold that a written instrument which sets forth the undertaking of the persons executing it or discloses terms from which such an undertaking can be imported, and which shows the consideration for the

> undertaking, and which identifies the parties thereto, will be considered a contract in writing. *See* Annotation to 3 A.L.R. 2d, Sec. 2, p. 812, *et seq*[.]

*Mills*, 254 S.W.2d at 717 (footnotes omitted).

The Fayette Circuit Court observed that the parties to this action had different interpretations of the agreement. In support of its interpretation, Malibu Jack's relied upon statements included in the parties' negotiations. It argued that the parties' discussions indicated that Smith and Smith Family Ventures would be entitled to share in revenue *only if* Smith were required to guarantee the loan that would be used to purchase the Palumbo property. Smith and Smith Family Ventures noted that the parties' agreement contains no such language. They argued that whatever Malibu Jack's had in mind during the parties' negotiations, the unambiguous agreement clearly provides that a share of gross revenue will be distributed to Smith and Smith Family Ventures as a return on investment.

The circuit court correctly concluded that the parties' agreement "is not plain on its face that the '3% of gross revenues/royalty' provision is 'triggered by' Smith guaranteeing a separate loan for purchase of the Palumbo property." It observed that paragraph 3 of the parties' agreement "is simply not limited by any triggering language and there is no mention of a "personal guarantee[.]" The court determined that any such an intention could only be gleaned with reference to extrinsic evidence and that parol evidence could be consulted only where the

agreement was considered ambiguous.  Otherwise, the parties' intentions could be discerned only with reference to the four corners of the instrument.

However, examining the agreement's provisions, the court next determined that it was, in fact, ambiguous in a number of ways.  First, it observed that the contract provides that Smith agreed to provide *a loan* of $400,000, "upon Smith obtaining *loans.*"  (Emphasis added.)  The court concluded that reference to *loans*, plural, to be obtained by Smith does not match the subsequent reference to a *single loan* of $400,000 that he agreed to make to the Hattons and Malibu Jack's.

There is no allegation that this provision was breached.  Moreover, the language does not render the agreement ambiguous.  No matter how Smith obtained the $400,000 to fund the loan to Malibu Jack's -- whether it was through a number of loans to him from multiple creditors or a single loan to him from a single creditor -- the agreement plainly provides for a single loan to Malibu Jack's.  This loan was provided to Malibu Jack's as promised.

Next, the circuit court considered the agreement's provision relating to Smith's interest in Malibu Jack's gross revenues.  Again, the agreement provides that "[i]n lieu of ownership interests in the *entities*, Smith shall be entitled to 3% of gross revenues/royalty (including sale of business, property, real estate of any business interests related to Malibu Jack concept, etc.)."  (Emphasis added.)  The court concluded that use of the word "entities" in this paragraph could be read

-12-

to include Kentucky Basketball Academy, LLC -- lessee in the lease agreement assigned to Smith and Smith Family Ventures pursuant to the agreement's paragraph 2 -- rather than to Malibu Jack's and other possible future locations of Malibu Jack's. None of the businesses described in paragraph 2 is ever referred to as "entities," however. The term "entities" is used in the agreement only to refer to business organizations related to Malibu Jack's. Consequently, we are not persuaded that this provision is reasonably susceptible to different or inconsistent, yet reasonable, interpretations. Use of the term "entities" in paragraph 3 does not make the contract ambiguous.

The circuit court observed that "the Agreement does not define what is meant by "3% of gross revenues/royalty"; that the meaning of the phrase "Malibu Jack concept, etc." is necessarily subject to interpretation; and that "counsel expressed uncertainty [at the hearing] regarding whether the Assignment of 35% [of the lease/option agreement with Kentucky Basketball Academy, LLC] was intended to be perpetual or whether it was extinguished upon repayment of the $400,000 loan." Based upon this analysis, the court determined that the 5-year period of limitations ordinarily applicable to unwritten agreements precluded the action for breach of contract.

While the court noted that Smith had a difficult time defining what was meant by the words "revenues/royalty," in his deposition it concluded that

"gross revenue" is a "commonly understood concept." The term "revenue" is likewise a readily understood concept. Failing to define a contract term does not always -- or even often -- result in an ambiguity. *Davis v. Progressive Direct Insurance Company*, 626 S.W.3d 518 (Ky. 2021). The parties expressly contemplated that Smith and Smith Family Ventures would be further compensated through receipt of 3% of Malibu Jack's revenue/royalty. Use of this phrase did not render the agreement ambiguous.

The court concluded that the meaning of the phrase "Malibu Jack concept, etc." is necessarily subject to interpretation and that its use rendered the parties' agreement ambiguous. We disagree. The disputed phrase simply defines the list of assets from which Malibu Jack's revenues/royalty could be expected to derive. This phrase does not render the agreement ambiguous or incomplete.

Finally, we conclude that counsel's interpretation of the provision relating to the assignment of a portion of the lease/option agreement between Malibu Jack's and Kentucky Basketball Academy, a provision not at issue in this dispute, is largely irrelevant as it involves a different source of remuneration not challenged in this proceeding. The entirely separate provision does not cause the remainder of the agreement to be rendered so vague as to be treated as an oral contract subject to a five-year statute of limitations.

Having reviewed the provisions of the parties' agreement in dispute, we conclude that they are clear and unambiguous. The parties agreed that in exchange for making a loan to Malibu Jack's (which presumably could not be secured elsewhere), Smith and/or Smith Family Ventures would be assigned an interest in a particular lease agreement and would be paid 3% of gross revenues/royalty of the Malibu Jack's concept, specifically including any sale of the business, personal property, and/or real estate of any business interest related to the Malibu Jack's concept. Malibu Jack's accepted the $400,000 loan, agreed to repay it, and executed the necessary documents assigning part of the lease agreement to Smith.

In a related argument, Smith and Smith Family Ventures contend that the trial court erred by concluding that the doctrine of laches also precludes enforcement of the agreement's provisions. We agree. The equitable doctrine of laches prohibits claims "where a party engages in unreasonable delay to the prejudice of others rendering it inequitable to allow that party to reverse a previous course of action." *Cherry v. Augustus*, 245 S.W.3d 766, 774 (Ky. App. 2006). However, because Smith and Smith Family Ventures sought a purely legal remedy within the applicable period of limitations, the equitable doctrine of laches is not a viable defense. *See Gover's Administrator v. Dunagan*, 299 Ky. 38, 184 S.W.2d

225, 227 (1944) (in purely legal claims "the statute of limitations rather than the doctrine of laches is applicable").

Next, Smith and Smith Family Ventures contend that the circuit court erred by concluding that Malibu Jack's was entitled to judgment as a matter of law with respect to their claims based upon theories of promissory estoppel and unjust enrichment -- as well as their claim for an accounting. While a party may alternatively plead both equitable claims (including promissory estoppel, unjust enrichment, and an accounting) and a breach of contract claim in his complaint, a party may not recover upon both kinds of claims. Promissory estoppel and unjust enrichment are unavailable where the terms of an express contract control. *Furlong Development Co., LLC v. Georgetown-Scott Cnty. Planning and Zoning Commission*, 504 S.W.3d 34 (Ky. 2016); *Sparks Milling Co. v. Powell*, 283 Ky. 669, 143 S.W.2d 75 (1940). A claim for an accounting is also an equitable remedy. *Peter v. Gibson*, 336 S.W.3d 2 (Ky. 2010). Although they do not agree as to its terms, the parties do agree that they entered into a contract. Because we have concluded that Smith and Smith Family Ventures are entitled to proceed on remand on their claim for breach of contract, the circuit court's order with respect to the equitable claims is immaterial.

In summary, we conclude that the circuit court erred in determining that the contract was ambiguous and that, therefore, an abbreviated limitations

period should apply.  We also conclude that entry of summary judgment in favor of Appellees was erroneous.

Having determined that a viable claim for breach of contract exists, we remand this case to the circuit court for a resolution of this dispute by further proceedings.

ALL CONCUR.

| BRIEFS FOR APPELLANTS: | BRIEF FOR APPELLEES: |
|---|---|
| Ivey L. Workman | Carroll M. Redford, III |
| Andre F. Regard | Elizabeth C. Woodford |
| Lexington, Kentucky | Lexington, Kentucky |